Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3303 | **DATE** | 1/29/2001 |
| **CASE TITLE** | Austin, Eberhardt, & Donaldson, et al. vs. Morgan Stanley Dean Witter Trust, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 2/22/01 at 10:00 a.m. Enter Memorandum Opinion and Order. Defendants' motion [5] to dismiss the claim of Austin, Eberhardt and Donaldson, Corp. is granted. The motion is denied in all other respects. Oral motion for leave to file amended complaint is granted. Defendants to answer or otherwise plead by 2/20/01.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB - 2 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MD7 | courtroom deputy's initials | 01 FEB -1 PM 2:33 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| AUSTIN EBERHARDT & DONALDSON, ) <br> CORP., and ROBERT YOUNGMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MORGAN STANLEY DEAN WITTER ) <br> TRUST FSB, and MORGAN STANLEY ) <br> DEAN WITTER & CO., ) <br> ) <br> Defendants. ) | **DOCKETED** <br> FEB - 2 2001 <br><br> Case No. 00 C 3303 |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Austin, Eberhardt & Donaldson, Corporation ("AED"), an Illinois corporation, and Robert Youngman ("Youngman"), an Illinois resident, have sued defendants Morgan Stanley Dean Witter Trust, FSB ("MSDW Trust") and Morgan Stanley Dean Witter & Co. ("MSDW"), both Delaware corporations, based on diversity jurisdiction, alleging claims of defamation and false light. Defendants have moved to dismiss plaintiffs' complaint. For the reasons stated below, the court grants the motion as to the false light claim of plaintiff AED but otherwise denies defendants' motion.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no facts in

1

support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 101, 102 (1957); *Kennedy* v. *Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996).

## ALLEGED FACTS

AED is a legal marketing and consulting firm and Youngman is its Secretary/Treasurer. Beginning in 1997, AED entered into a business relationship with defendants MSDW and MSDW Trust through its president Youngman whereby plaintiffs would facilitate and administer estate planning seminars for defendants' clients. Defendants, through their officer and agent, James C. Smith ("Smith"), Vice President and Regional Trust Coordinator, agreed to sponsor and endorse a program administered by plaintiffs known as the "Estate Planning Team." Pursuant to agreement, AED met with MSDW branch managers and other MSDW employees to set up estate planning seminars for defendants' clients and financial advisors. AED was responsible for arranging for estate planning attorneys to conduct Estate Planning Team seminars. The attorneys, who conducted the seminars, contracted with AED to participate in the program for a monthly fee. AED designed invitations to the seminars, with input from defendants' agents including Smith, and the invitations were approved by defendants' compliance department and its employee, Wendy Moy.

Beginning in 1998, plaintiff organized Charitable Remainder Trust seminars for

defendants' clients and brokers; beginning in 1999, plaintiffs organized Estate Planning Team seminars for defendants' clients and brokers; and also beginning in 1999 plaintiffs organized Estate Planning training for defendants' financial advisors. The seminar program and training of financial advisors were conducted in defendants' offices with the authorization and approval of defendants and their employee Smith. Smith informed plaintiffs that the seminar program was authorized and approved by defendants.

On April 19, 2000, defendants, through their agent, Hal Taylor, published an e-mail to all MSDW branch managers, which states as follows:

> !!!! WARNING !!!!        !!!! WARNING !!!!
> PLEASE BE ON ALERT FOR THE FOLLOWING INDIVIDUALS!
> 1. BOB YOUNGMAN        2. RICHARD ASHLEY
> BOTH OF THE FIRM OF AUSTIN, EBERHARDT & DONALDSON. IF YOU AND YOUR FINANCIAL ADVISORS ARE APPROACHED BY THESE INDIVIDUALS AND/OR ANY PERSONS REPRESENTING THEMSELVES AS AN ESTATE PLANNING ATTORNEY OR A REPRESENTATIVE WITH A CONSULTING FIRM OF AUSTIN, EBERHARDT AND DONALDSON, THEY SHOULD NOT BE ALLOWED IN YOUR BRANCH TO CONDUCT BRANCH MEETINGS WITH YOUR FINANCIAL ADVISORS ON A NEW MARKETING PROGRAM – "THE ESTATE PLANNING TEAM". THIS PROGRAM IS NEITHER AUTHORIZED NOR SPONSORED BY MORGAN STANLEY DEAN WITTER TRUST, FSB OR MORGAN STANLEY DEAN WITTER. PLEASE ADVISE YOU [sic], FINANCIAL ADVISORS TO ALERT YOUR SALES MANAGER OR YOUR ADMINISTRATIVE MANAGER IMMEDIATELY SHOULD THEY RECEIVE INVITATIONS FROM THE CONSULTING FIRM TO SUCH BRANCH MEETINGS AND CONTACT HAL TAYLOR, SENIOR VICE PRESIDENT AND GENERAL COUNSEL OF MORGAN STANLEY DEAN WITTER TRUST AT (201) 938-6111 OR WENDY MOY, VICE PRESIDENT AND ASSISTANT DIRECTOR OF COMPLIANCE/MORGAN STANLEY DEAN WITTER AT (212) 392-2508.

(Complaint, ¶ 22 and Ex. B). The e-mail was also published by defendants' employees to attorneys who are AED clients. Because defendants, through their agents, prior to, at the time of

and immediately after the e-mail, authorized and sponsored the Estate Planning Team program administered by plaintiffs, the e-mail falsely states that the program was not authorized or sponsored by defendants. And, as a result, plaintiffs have lost substantial income and revenue, and attorneys who had contracts with AED for participation in the Estate Planning Team Program have withdrawn from the program and demanded return of their monthly fees.

## DISCUSSION

A.  Defamation

In Illinois,[1] "A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him." *Kolegas v. Heftel Broad. Corp.*, 607 N.E2d 201, 206 (Ill. 1992) (citing Restatement (Second) of Torts § 559 (1977)); *see also Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996) (noting that "The Illinois Supreme Court has adopted the definition of a defamatory communication used in the Restatement (Second) of Torts, § 559[.]"). "To prove a claim of defamation, a plaintiff must show that the defendant made a false statement concerning plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by defendant, and that plaintiff was damaged." *Dubinsky v. United Airlines Master Executive Council*, 708 N.E.2d 441, 446-47 (Ill. App. Ct. 1999). Defamatory statements may be per se or per quod. *Kolegas*, 607 N.E2d at 206. A per quod defamation action requires plaintiff

---

[1]The parties do not dispute that Illinois law controls. *See Cook v. Winfrey*, 141 F.3d 322, 329 (7th Cir. 1998) ("A federal court sitting in diversity applies the choice of law rules of the state in which it sits. . . . [and] in multistate defamation cases, Illinois cases indicate that 'the applicable law is that of the victim's domicile, period.'") (internal citations and quotations omitted).

to plead "extrinsic facts showing the defamatory nature of the language, as well as allegations of specific facts establishing the plaintiff's special damages." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303 (Ill. 1996); *see also Kolegas*, 607 N.E.2d at 206 ("extrinsic facts are required to explain its defamatory meaning"). "If a defamatory statement is actionable per se, [however,] the plaintiff need not plead or prove actual damage to his or her reputation in order to recover." *Dunlap v. Alcuin Montessori Sch.*, 698 N.E.2d 574, 580 (Ill. App. Ct. 1998).

Plaintiffs have brought their defamation action as a per se action.[2] To establish per se defamation a plaintiff must show that "the defamatory nature of the language is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed." *Kolegas*, 607 N.E.2d at 206. Illinois courts recognize four categories of per se statements that satisfy this requirement:

> (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business.

---

[2]Plaintiffs' complaint brings only a per se defamation claim. In their response to the motion, however, plaintiffs assert,

> To the extent the Court finds plaintiffs' claims to be libel per quod rather than libel per se, plaintiffs have plead [sic] that they were, in fact, prejudiced by the defamatory statements. The E-mail was published not only to defendants' employees but to attorneys who are plaintiffs' clients. (Comp. ¶23). As a result of the defamation by the defendants, plaintiffs have suffered damages including loss of income and because clients have demanded return of their monthly fees." (Comp. ¶35).

Pls.' Am. Mem. in Opposition to Defs.' Mot. to Dismiss at 6. Because the court finds libel per se, it is unnecessary to examine the sufficiency of plaintiffs' per quod pleading.

5

*Id.* At the same time, for per se actions in Illinois, the "innocent-construction" rule applies.[3] This rule requires a court to consider whether a statement that otherwise falls into one of the per se categories "is reasonably capable of an innocent construction." *Id.* If so, the statement is not to be regarded as defamatory per se. *Id.* There is no balancing. *Dubinsky*, 708 N.E.2d at 447; *see Rasky v. Columbia Broad. Sys., Inc.*, 431 N.E.2d 1055, 1058 (Ill. App. Ct. 1982) (even if the statement is "capable of two constructions, one of them defamatory and the other innocent, the innocent construction must be chosen"). The rule "favors defendants . . . in that a nondefamatory interpretation must be adopted if it is reasonable . . . because of the presumption of damages in per se actions." *Anderson*, 667 N.E.2d at 1302. "Whether a statement is reasonably susceptible to an innocent interpretation is a question of law for the court to decide." *Kolegas*, 607 N.E2d at 207; *see also Anderson*, 667 N.E.2d at 1302.

In order for an alleged defamatory statement to be reasonably capable of an innocent construction, it must be reasonable in the context in which it appears. *See Kolegas*, 607 N.E.2d at 206 ("The innocent-construction rule requires courts to consider a written or oral statement in context, giving the words and implications therefrom their natural and obvious meaning."); *Rasky*, 431 N.E.2d at 1059 ("[T]he meaning of an allegedly libelous statement must be gathered not only from words singled out, but also from the context of the statement. It must be

---

[3]*See Chicago City Day School v. Wade*, 697 N.E.2d 389, 394 (Ill. App. Ct. 1998) (noting that this rule is a minority rule, which "prevents a case from getting to the jury if there is any possible reasonable innocent interpretation of the language," whereas the majority rule permits "the judge [to decide] whether the language is reasonably susceptible of a defamatory interpretation; and, if it is, the case goes to the jury despite any conceivable innocent interpretation").

determined whether the 'gist' or 'sting' of the statement, taken as a whole, is capable of an innocent construction.") (internal citation omitted). Moreover, the court must "interpret the allegedly defamatory words as they appear to have been used and according to the idea they were intended to convey to the reasonable reader," *Dubinsky*, 708 N.E.2d at 448, and "focus on the predictable effect the statement had on those who received the publication[.]" *Dunlap*, 698 N.E.2d at 581. The "court 'will not strain to interpret allegedly defamatory words in their mildest and most inoffensive sense.'" *Id.* at 580.

Plaintiffs allege that the e-mail contains the false statement that plaintiffs are not authorized or sponsored by defendants to conduct the program when they were, and that the e-mail, taken as a whole, characterizes plaintiffs as dangerous and is, therefore, per se libelous under two categories: (1) it imputes a want of integrity in plaintiffs' profession and business; and (2) it prejudices their business. Defendants argue that plaintiffs' claim should be dismissed under the innocent construction rule because the e-mail is reasonably capable of an innocent interpretation, namely that

> the average reader could easily (and justifiably) conclude that the e-mail was sent simply because Morgan Stanley Dean Witter has a corporate policy barring any outside firms from soliciting its clients, particularly as an 'authorized' or 'preferred' vendor. A reader could also easily (and, again, justifiably) conclude that Morgan Stanley Dean Witter declined to do business with AED and Youngman for financial or other reasons having nothing to do with Plaintiffs' integrity or ability.

Defs.' Reply at 3. Defendants argue that the "Warning" words are "just as – if not far more – likely . . . meant to ensure that busy employees who receive hundreds of communications each day actually paid attention to this particular e-mail." *Id.* Defendants also, less directly, argue that the

7

e-mail is "no different than statements that routinely appear in prospectuses, newspaper advertisements and TV commercials." Defs.' Mem. in Support of Their Mot. to Dismiss at 2.[4] Viewing the e-mail as a whole, the court concludes that it is not reasonably capable of the innocent interpretation suggested by defendants. Because it contains no reference to a corporate policy barring outside firms from doing business on their property (regardless of reason), the e-mail cannot be read simply as charging plaintiffs with not following a neutral corporate policy. Rather, the e-mail, which specifically singles out plaintiff Youngman and identifies AED, necessarily carries with it the message that plaintiffs are threatening or dangerous. Even if one concedes that a heading !!! WARNING !!!! !!!! WARNING !!!! may be a dramatic way to catch the attention of employees who receive many e-mails a day, nothing in the remainder of the e-mail dispels the implied message of impending danger. Following this warning is an advisory to "be on alert for the following individuals! 1. Bob Youngman . . . of the firm of Austin Eberhardt & Donaldson." The natural meaning of the phrase "on the alert" is to be "watchful and prepared for danger or emergency." Webster's II, New College Dictionary, at 27 (1995). The e-mail then states that if the recipients are "approached" by the individuals or someone representing AED, "they should not be allowed in your branch to conduct branch meetings . . . on a new marketing program – 'the estate planning team'" which "is neither authorized nor sponsored by" defendants.

---

[4]Indeed, defendants argue that the e-mail is "not appreciably different from the disclaimer in the invitations to Plaintiffs' programs – *which AED itself designed,*" Defs.' Mem. in Support of Their Mot. to Dismiss at 7 n.4, and refer the court to plaintiffs' complaint and Ex. A thereto. Even if this argument were persuasive, which it is not, for purposes of this motion the court is constrained to consider only the face of the allegedly defamatory e-mail in determining whether it is susceptible to an innocent construction.

8

The message then sets out the immediate action that should be taken in the event recipients are invited to such branch meetings: to advise managers immediately and to contact defendants' senior vice president and general counsel or another vice president, providing phone numbers. The use of such words and phrases as "warning," "alert," "should not be allowed in"; to request "immediate" action; and to provide a personal form of communication with some of defendants' high-ranking officers having enforcement, legal and/or other compliance authority only reasonably can be construed as imputing for the reasonable reader that plaintiffs are dangerous and that the recipients should not do business with them. The court concludes that taken as a whole, the e-mail is "so obviously and materially harmful" that injury to plaintiffs' reputations may be presumed. As a result, the e-mail fits into the per se category of defamatory statement that prejudices plaintiffs in their business and the e-mail is not reasonably capable of an innocent construction.[5] *Compare, Gardner v. Senior Living Systems, Inc.*, 731 N.E.2d 350, 355 (Ill. App. Ct. 2000) (reversing dismissal of per se claim concerning words that impute criminal offense category, reasoning that letter could not be viewed innocently as charging plaintiff with merely a lack of rigor in following company procedure because she thought it was waste of time; although word "illegal" could have innocent construction in that not necessarily refer to criminal offenses, the "letter went beyond mere warning about customer warranties; it warned that customers should not do business with plaintiff because she stole defendants' software and was using it illegally to compete," and "the effect of the letter was to attribute criminal activity to her and to prejudice her

---

[5]Because the court finds that the plaintiffs have stated a claim under the per se category of words that prejudice the business, it does not address plaintiffs alternative argument that the e-mail also fits under the per se category of imputing a want of integrity in their employment.

9

in the ability to do business within the same marketplace"); *Prof'l and Bus. Men's Life Ins. Co. v. Bankers Life Co.*, 163 F. Supp. 274, 287-88 (D. Mont. 1958) (Montana law) (although not expressly applying an innocent construction rule, court held that advertisement – headed by the words "Important Notice" and which asked the recipients to contact insurance commissioner for his opinion if they were approached by persons regarding the purchase of life insurance – could only be construed as a warning akin to "call a cop" and was certain to injure the plaintiff in the business of insurance). The court, therefore, denies defendants' motion to dismiss plaintiffs' defamation per se claim.

B.    False Light

In order to state a claim for false light, three requirements must be met:

First, the allegations of plaintiffs' complaint must show that plaintiffs were placed in a false light before the public as a result of the defendants' actions. Second, the court must determine whether a trier of fact could decide that the false light in which the plaintiffs were placed would be highly offensive to a reasonable person. Finally, the plaintiffs must allege and prove that the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.

*Kolegas*, 607 N.E.2d at 209-10 (citing *Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987 (Ill. 1989)); *Pope*, 95 F.3d at 616.

1.    Plaintiff AED

Defendants move to dismiss the false light claim against AED on the basis that corporations lack standing to sue for false light. The court agrees. Although defendants have not pointed to any Illinois case that expressly holds that corporations lack standing to sue for false light, neither have plaintiffs brought to the court's attention any controlling cases holding that

10

corporations do have standing to sue for false light, and all of the cases before the court concern an individual's rather than a corporation's false light claim. The court observes that the Illinois Supreme Court has relied heavily on the Restatement for the definition and the elements of the claim of false light. *See Lovgren v. Citizens First Nat'l Bank*, 534 N.E.2d 987, 990 (Ill. 1989) (citing to Restatement (Second) of Torts § 625E, comment c. (1977)), and that the Restatement has recognized that corporations do not have standing to sue for false light. Restatement (Second) of Torts § 652I ("Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded") and comment c. ("A corporation . . . has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion of privacy covered by §§ 652B to 652E."). In other jurisdictions, courts have relied on the Restatement to hold that corporations lack standing to sue for false light or other privacy torts. *See Southern Air Transp. v. American Broad. Cos.*, 670 F. Supp. 38, 42 (D.D.C. 1987) (reasoning that since the District of Columbia follows the Restatement's formulation of the false light claim and the Restatement prohibits corporations from bringing suit for false light claims, plaintiff corporation had not stated a claim upon which relief could be granted); *cf. In the Matter of Medical Lab. Mgmt. Consultants*, 931 F. Supp. 1487, 1493 (D. Ariz. 1996) (because Arizona courts were bound to apply Restatement in absence of Arizona case law on issue, court applied Restatement § 652I to hold that corporation could not maintain action for invasion of privacy). Other courts, without referring to the Restatement, have held that corporations do not have standing to bring false light or privacy claims. *See, e.g., Seidl v. Greentree Mortgage Co.*, 30 F. Supp. 2d 1292, 1302 (D. Colo. 1998) (interpreting Colorado law

11

to hold that a corporation lacks standing as limited partnership to bring claim for false light); *CNA Fin. Corp.* v. *Local 743 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 515 F. Supp. 942, 946 (N.D. Ill. 1981) (citing California, Pennsylvania, New York law) (granting motion to dismiss corporation's claim of invasion of privacy noting, "Many courts that have considered the question have concluded that a corporation cannot maintain an action for invasion of the right to privacy and we believe this represents the better reasoned approach."); *cf. United States* v. *Morton Salt Co.*, 338 U.S. 632, 651 (1950) ("corporations can claim no equality with individuals in the enjoyment of a right to privacy").

The court finds that, because Illinois has adopted the Restatement's definition of a false light claim, the Restatement excludes corporations from standing to assert such a claim, considerable authority from other jurisdictions declines to recognize a corporation's false light claim, and plaintiffs have cited no authority supporting such a claim, the Supreme Court of Illinois, if it were deciding this motion, would hold that AED has failed to state a claim under Illinois law. Therefore, AED's false light claim will be dismissed.

2. Plaintiff Youngman

Plaintiff Youngman has sufficiently stated a claim for false light. First, plaintiff has sufficiently alleged the publicity element of false light. While "publicity" for purpose of a false light claim requires plaintiff to allege that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," *Miller* v. *Motorola, Inc.*, 560 N.E.2d 900, 903 (Ill. App. Ct. 1990) (quoting Restatement (Second) of Torts § 652D, comment a, at 384-85 (1977)), the

requirement may be satisfied by disclosure to a smaller number of people with whom plaintiff has a special relationship, namely "a public whose knowledge of those facts would be embarrassing to the plaintiff." *Id.* (quotation omitted). *See also Herion v. Village of Bensenville*, 2000 WL 1648937, *6 (N.D. Ill. Nov. 1, 2000). Youngman has alleged that defendants' e-mail falsely stated that he was unauthorized and unsponsored by defendants to conduct the seminar program and that the e-mail portrayed him as dangerous. Youngman has also alleged the e-mail was published to all of defendants' branch managers and to attorneys who are AED clients and that the e-mail placed him in a false light in the estate planning professional community.

The second element is also satisfied. This element is met "'when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.'" *Lovgren*, 534 N.E.2d at 990 (citing Restatement (Second) of Torts § 625E, comment c). On the other hand, "minor mistakes in reporting, even if made deliberately, or false facts that offend a hypersensitive individual will not satisfy this element." *Id.* Defendants argue the e-mail, even if false, was not "highly offensive" because it states no more than that AED and Youngman were not authorized to conduct their seminar program at defendants' branch offices but does not accuse plaintiffs of any wrongdoing. As with their argument on the defamation claim, defendants argue that any reasonable reader would conclude the e-mail was just an attempt to enforce a corporate policy regarding third-party actions on defendants' property. Because this court has already concluded that a reasonable reader would interpret the e-mail as sending a message that plaintiffs were dangerous and posed a threat, the court concludes that a trier of fact could conclude that a reasonable man would be

13

justified in the eyes of the community, particularly the estate planning community, in feeling seriously offended by the publicity. Indeed, plaintiff has alleged that as a result of the statements, attorneys who had contracted to participate in the program withdrew and demanded return of their fees. Finally, plaintiffs also allege that defendants intended to place plaintiff in a false light and acted with actual malice and with knowledge that or reckless disregard for whether the statements would place plaintiff in a false light. In light of these allegations, the court finds plaintiff Youngman has adequately stated a claim for false light and denies defendants' motion as to him.

## CONCLUSION

For the reasons explained above, the court grants the defendants' motion to dismiss the claim of plaintiff AED for false light. The motion is denied in all other respects.

ENTER: *Joan N. Lefkow*
United States District Judge

Date: January 29, 2001